UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| MEHERET G. BERHE, | ) | |
|           Plaintiff, | ) | |
| vs. | ) | 2:13-cv-00552-RCJ-PAL |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION et al., | ) | ORDER |
|           Defendants. | ) | |

This is a residential foreclosure avoidance case involving one property. Pending befoe the Court is a Motion for Summary Judgment (ECF No. 25). For the reasons given herein, the Court grants the motion.

## I.     FACTS AND PROCEDURAL HISTORY

Plaintiff Meheret G. Berhe gave lender Northern Pacific Mortgage Co. a $274,000 promissory note to purchase or refinance real property at 9107 Black Maple Ave., Las Vegas, NV 89148 (the "Property"), secured by a deed of trust (the "DOT") against the Property. (*See* DOT 1–3, Aug. 25, 2005, ECF No. 5-1). Fidelity National Title was the trustee on the DOT, and Mortgage Electronic Registration Systems, Inc. ("MERS") was the lender's "nominee" and the beneficiary of the DOT. (*See id.* 2). MERS later assigned both the note and DOT to Bank of America, N.A., (*see* Assignment, Sept. 24, 2011, ECF No. 5-2), which it was empowered to do in

1  its dual capacity as the lender's nominee and beneficiary of the DOT, and which assignment

2  cured any split between the note and security that existed under the terms of the DOT itself, *see*

3  *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 258–60 (Nev. 2012). Bank of America then

4  assigned both the note and DOT—only the assignment of one instrument was necessary at this

5  point, because Bank of America owned both instruments such that one instrument would follow

6  the other as a matter of law, *see id.* at 257–58 (citing Restatement (Third) of Property: Mortgages

7  § 5.4(a)–(b))—to Defendant Federal National Mortgage Association ("Fannie Mae").

8  (*See* Assignment, Sept. 11, 2012, ECF No. 5-3). Seterus, Inc. then purported, as attorney-in-fact

9  for Fannie Mae, to substitute Defendant Quality Loan Service Corp. ("QLS") as trustee on the

10  DOT. (*See* Substitution, Oct. 25, 2012, ECF No. 5-4). QLS then filed a Notice of Default (the

11  "NOD"), along with the required Affidavit of Compliance (the "AC"), which appears to be

12  complete. (*See* NOD and AC, Dec. 3, 2012, ECF No. 5-5). The Director of the Nevada

13  Foreclosure Mediation Program ("FMP") issued an FMP Certificate indicating the Property was

14  not eligible for mediation, which indicates Plaintiff was either not an owner-occupier, had

15  surrendered the Property, or was in bankruptcy. (*See* FMP Certificate, Feb. 11, 2013, ECF No. 5-

16  6). QLS scheduled a trustee's sale for April 2, 2013. (*See* Notice of Sale, Mar. 7, 2013, ECF No.

17  5-7). Fannie Mae bought the Property at the trustee's sale for $315,604.52. (*See* Trustee's Deed,

18  June 4, 2013, ECF No. 25-9).

19        Plaintiff sued Fannie Mae and QLS in this Court on four causes of action that the Court

20  has characterized as: (1) quiet title based upon statutorily defective foreclosure under section

21  107.080; (2) declaratory relief as to alleged securities violations; (3) a qui tam action based upon

22  anti-trust violations by MERS; and (4) mortgage fraud under section 207.470. Defendants

23  moved to dismiss. The Court granted the motion as to all claims except the first claim for quiet

24  title based upon statutorily defective foreclosure, because the substitution of QLS as trustee was

25  executed by an entity (non-party Seterus, Inc.) purporting to be an agent of the beneficiary

(Fannie Mae), but there was no evidence that it was in fact an agent of Fannie Mae apart from Seterus's own claim of agency on the Substitution. Where this is the case, the Court typically requires defendants to provide evidence of the agency at the summary judgment stage. The Court noted that the second and third claims for declaratory relief concerning securities violations and anti-trust violations were mostly unintelligible and that to the extent they were intelligible, they consisted of generalized grievances against the mortgage industry. The Court granted Plaintiff leave to amend those claims to intelligibly plead a viable cause of action. The Court dismissed the fourth claim without leave to amend, because Plaintiff may not privately prosecute the criminal mortgage fraud statutes.

The Court denied a motion to reconsider. Plaintiff filed the Amended Complaint ("AC"), listing claims for: (1) violation of section 107.080; and (2) unfair business practices. Defendants have moved for summary judgment.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id*. A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

## III. ANALYSIS

Defendants have satisfied their initial burden to produce evidence that would entitle them to a directed verdict on the section 107.080 claim were the evidence to go uncontroverted at trial. That is, Defendants have now adduced evidence showing that Fannie Mae gave IBM Lender Business Process Services, Inc. ("IBM") a limited power of attorney on April 26, 2010 permitting it, *inter alia*, to appoint substitute trustees on its behalf, (*see* Limited Power of Att'y, Apr. 26, 2010, ECF No. 25-10), and that IBM changed its corporate name to Seterus, Inc. on June 1, 2011, (*see* Cert. of Amendment of Cert. of Incorp., June 1, 2011, ECF No. 25-11). This cures the potential remaining defect previously noted by the Court, i.e., whether Seterus in fact had authority from Fannie Mae to substitute QLS as trustee when it purported to do so on October 25, 2012. Plaintiff has not satisfied her shifted burden to adduce evidence to the contrary in opposition, and Defendants are therefore entitled to summary judgment on this claim.

The new claim for unfair business practices relies primarily upon the actions Defendants took in foreclosure. (*See* Am. Compl., ¶¶ 40–44, July 29, 2013, ECF No. 16). Those allegations cannot support an unfair business practices claim, because the foreclosure documents were in fact proper and in accordance with law. Paragraph 39 of the AC alleges that Defendants made fraudulent appraisal values upon which Plaintiff relied. But Defendants are not the appraiser. Defendants are: (1) the subsequent beneficiary and owner; and (2) the substitute trustee. Plaintiff may presumably bring a separate action against the appraiser for damages if she believes the appraiser engaged in professional negligence in issuing an inflated appraisal upon which she relied. *See, e.g.*, *Sage v. Blagg Appraisal Co.*, 209 P.3d 169, 170–76 (Ariz. Ct. App. 2009).

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 25) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 27th day of May, 2014.

_____
ROBERT C. JONES
United States District Judge